**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ERIC RAMOS SANTANA,** | ) | |
| **ID# 543602** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:08-CV-0148-G (BH)** |
| | ) | **ECF** |
| **NATHANIEL QUARTERMAN, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I.  BACKGROUND**

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for possession of a controlled substance in Cause No. F88-81939-V.  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

On January 31, 1990, after pleading not guilty, petitioner was convicted and sentenced to fifteen years for possession of a controlled substance in Cause No. F88-81939-V. (State Habeas Transcript[WR-39,664-02]:1). Concurrent with this conviction, petitioner was also given a ten-year sentence for delivery of cocaine in Cause No. F88-83979-V. *Id*. at 32. On August 27, 1991, petitioner was released on parole.  His parole was revoked without new charges and he returned to TDCJ custody on July 27, 1992. *Id*. at 32, 37.  Petitioner was released on parole again on March 5, 1993, but he returned to TDCJ custody on a parole revocation and a new ten-year sentence in Cause No. F95-43203-HV for delivery of a controlled substance on May 16, 1996. *Id*. at 32-33, 37.

1

On March 22, 2001, petitioner was released on mandatory supervision, but he returned to TDCJ custody with a violation of mandatory supervision and a new five-year sentence in Cause No. F04-43837-LK for possession of a controlled substance on December 22, 2004. *Id.* at 33.

On October 5, 2007, petitioner filed a state application for writ of habeas corpus alleging that the TDCJ had improperly denied him his right to be released on mandatory supervision in Cause No. F88-81939-V on August 17, 2007. (S.H.Tr.[WR-39,664-02]:2-6, 16, 27). On December 20, 2007, the state trial court issued findings recommending that relief be denied, based on two affidavits from employees of TDCJ setting out the circumstances surrounding petitioner's periods of incarceration. Specifically, the trial court found that there was no error in the computation of petitioner's time credits and that petitioner's due process rights were not violated when the Board of Pardons and Paroles considered and denied him discretionary mandatory supervision release. *Id.* at 28-29. On January 16, 2008, the Court of Criminal Appeals denied relief without written order based on these findings of the trial court. *Id.* at cover.

Petitioner filed his federal petition on January 25, 2008, alleging that he had been denied his right to be released on mandatory supervision. (*See* Pet. at 9).[1] Respondent filed a response on May 22, 2008, and furnished the state court records. Petitioner filed a reply brief on June 13, 2008, and a supplemental reply on July 16, 2008.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

---

[1]*See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-
> > ation of the facts in light of the evidence presented in the State court
> > proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of petitioner's

state writ constitutes an adjudication on the merits.  *See Ex parte Thomas*, 953 S.W.2d 286, 288-89

(Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on

the merits).  Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-

eral law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to

that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must

issue "if the state court identifies the correct governing legal principle from [the] Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793.

 Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  MANDATORY SUPERVISION

Petitioner alleges that he has been denied his right to be released on mandatory supervision for his conviction in Cause No. F88-81939-V.  He asserts that as of the date of his federal petition, he had accrued a total number of days served (counting both calendar days and good time) exceeding the fifteen-year sentence he received in 1990.

Under state law as it existed in 1988 when petitioner committed his offense, a prisoner not on parole is to be released to mandatory supervision when the calendar time served plus any accrued good conduct time equals the maximum term to which he was sentenced, unless he was convicted

of certain violent offenses or for offenses in which a deadly weapon finding was made. *See* TEX.

CODE CRIM. PROC. ANN. art. 42.18, § 8(c) (Vernon 1987).[2]  For those covered by this statute, the

mandatory supervision scheme in place in Texas prior to September 1, 1996 creates an expectation

of early release. *See Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000).  Because petitioner's

conviction in the 1988 case is not one the offenses excluded by statute, and there was no deadly

weapon finding made, petitioner was entitled to mandatory supervision release under this statute.[3]

Article 42.18, § 8(c) was repealed, however.  Under subsequent law, even if an inmate has

been convicted of a crime that is mandatory supervision eligible, the parole panel may choose not

to release an inmate to mandatory supervision if the panel determines that: 1) the inmate's accrued

good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and 2)

the inmate's release would endanger the public. *See* TEX. GOV'T CODE ANN. § 508.149(b) (Vernon

2001).  If a parole panel denies mandatory parole under this section, the inmate must be considered

for mandatory supervision two times in the next two years after the denial. *See* § 508.149(d).

Therefore, under the current scheme, the statute presumes that an eligible inmate will be released

to mandatory supervision when his calendar time plus good conduct time equals the maximum

sentence, and the parole panel must justify non-release. *See Ex parte Hill*, 208 S.W.3d 462, 464

(Tex. Crim. App. 2006).

With its response, respondent has attached as an exhibit an affidavit from Charley Valdez,

---

[2]  "Article 42.18, section 8(c) of the Texas Code of Criminal Procedure providing for release of certain prisoners to mandatory supervision [became] effective . . . September 1, 1985." *Spelling v. State*, 825 S.W.2d 533, 536 (Tex. App. – Fort Worth 1992, no pet.).

[3]  Indeed, the record reflects that petitioner has been released on mandatory supervision in the past. (S.H.Tr.[WR-39,664-02:33).

an employee with the Classifications and Records division of the TDCJ. (Response, Ex. A). Ms.

Valdez submitted a similar, although not identical affidavit, to the trial court as part of the state

habeas proceedings. (S.H.Tr.[WR-39,664-02]:31-34). In the affidavit submitted at the federal level

is the following statement:

> The sentence under cause number F-0443837-LK is controlling offender's
> mandatory release date, while the sentence under cause number F88-81939-V is
> controlling offender's maximum expiration date.

(Response, Ex. A, p. 4). Respondent has also included as an exhibit the minutes from the Board of

Pardons and Paroles which reflect that petitioner was denied discretionary mandatory supervision

on August 13, 2007. The minutes state the reasons for this denial, including that his accrued good

conduct time is not an accurate reflection of his potential for rehabilitation and his release would

endanger the public. (Response, Ex. C). Likewise, with his supplemental reply, petitioner has

included a copy of a letter he received from the State Counsel of Offenders, dated May 16, 2008.

This letter states that Cause #F88-81939-V is mandatory supervision eligible and that petitioner had

met the time requirements for that as of September 26, 2007. However, the letter goes on to state

that mandatory supervision release in Cause #F04-43837-LK is *discretionary*, that the Board of

Pardons and Paroles denied his release in this case on August 17, 2007, and that he would still

receive parole consideration for Cause #F04-43837-LK. (Supplemental Reply, Ex. #3).

The record shows that petitioner was not denied mandatory supervision release in his 1988

case in 2007, as he asserts in his federal petition. He was denied mandatory supervision release in

his 2004 case. This is permissible under state law because petitioner's 2004 conviction occurred

after the law regarding mandatory supervision changed, making it possible for the Parole Board to

deny mandatory supervision release in certain instances. It chose to do in this case. Moreover, the

record reflects that petitioner was not released on mandatory supervision in his 1988 case when he accrued fifteen years total calendar plus good credit time because he is still required to serve time on his 2004 case, until such time that he is granted parole or mandatory supervision or discharges that sentence. According to the record, if he is not released earlier, petitioner will discharge his 2004 case on July 3, 2009. (Response, Ex. B, p. 2).[4] Petitioner appears to acknowledge this in his supplemental reply but contends that he should have either been released in September of 2007 under the 1988 cause number and then been given a new TDCJ number under the 2004 cause number, or he should have been released on discretionary mandatory supervision in the 2004 case.

Petitioner has neither alleged nor shown that the TDCJ is required to change an inmate's number when he reaches his mandatory supervision date in one case, but not the other. Discretionary mandatory supervision is, under state law, discretionary, and the parole board made specific findings regarding the reasons it was denied in petitioner's case as required under state law. Accordingly, the state court's denial of relief is not contrary to federal law, and it is recommended that relief be denied. Petitioner has shown no error which entitles him to federal habeas relief.

### IV.  RECOMMENDATION

The Court should **DENY** the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254it with prejudice.

SIGNED on this 29th day of May, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[4] The on-line TDCJ database lists July 3, 2009, as the projected release date for petitioner, if he is not released on parole earlier.

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE